UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARK BIROSHAK, et al., | : | Case No. C-1-01-0300 |
| | : | |
| Plaintiffs, | : | Judge Weber |
| | : | |
| v. | : | **MOTION FOR SUMMARY JUDGMENT** |
| | : | **ON BEHALF OF DEFENDANTS,** |
| THE CITY OF HAMILTON, OHIO, | : | **CITY OF HAMILTON, OHIO, NEIL R.** |
| et al., | : | **FERDELMAN, DETECTIVE WENDELL** |
| | : | **S. SORRELL, LT. GREGORY** |
| | : | **DININGER, LT. J. SCOTT SCRMIZZI,** |
| Defendants. | : | **LT. MICHAEL LEASE, SGT. STEVEN** |
| | : | **HENDERSON, DETECTIVE JAMES** |
| | : | **CALHOUN, DETECTIVE JAMES SMITH,** |
| | : | **DETECTIVE WILLIAM HENSLEY,** |
| | : | **DETECTIVE RAMON W. MCQUEEN,** |
| | : | **DETECTIVE STEVEN ROGERS,** |
| | : | **DETECTIVE MICHAEL WALDECK,** |
| | : | **DETECTIVE DAVID WEISSINGER,** |
| | : | **OFFICER LEE BRIAN BUCHANAN,** |
| | : | **OFFICER JEFFREY ECK, OFFICER** |
| | : | **DOMINIC SPINELLI, OFFICER ROSS** |
| | : | **EDWARD SHERMAN, OFFICER** |
| | : | **MELVIN GRAY, OFFICER PAUL S.** |
| | : | **DAVIS AND SHAWN PATER.** |

Come now Defendants, the City of Hamilton, Ohio, Neil R. Ferdelman, Detective Wendell Sorrell, Lt. Gregory Dininger, Lt. J. Scott Scrmizzi, Lt. Michael Lease, Sgt. Steven Henderson, Detective James Calhoun, Detective James Smith, Detective William Hensley, Detective Ramon W. McQueen, Detective Steven Rogers, Detective Michael Waldeck, Detective David Weissinger, Officer Lee Brian Buchanan, Officer Jeffrey Eck, Officer Dominic Spinelli, Officer Ross Edward Sherman, Officer Melvin Gray, Officer Paul S. Davis and Shawn Pater (hereinafter referred to as "Hamilton Defendants") who, pursuant to Fed. R. Civ. P. 56 respectfully move this Court for summary judgment in their favor as there is

no genuine issue as to any material fact and said moving parties are entitled to judgment as a matter of law.  This Motion is supported by the attached Memorandum, the Affidavit of Neil R. Ferdelman, the deposition excerpts of Mark Biroshak, Mary Biroshak, Neil R. Ferdelman, C. Stiegelmeyer, K. Etchison, M. Mann, G. Dininger and L. Buchanan.

>Respectfully submitted,
>
>/s/    Wilson G. Weisenfelder, Jr.
>Wilson G. Weisenfelder, Jr. (#0030179)
>RENDIGS, FRY, KIELY & DENNIS, LLP
>One West Fourth Street, Suite 900
>Cincinnati, OH 45202
>(513) 381-9292
>(513) 381-9206 - Facsimile
>
>Trial Attorney for Hamilton Defendants

**MEMORANDUM**

**I.    INTRODUCTION.**

This case stems from a raid and search of the residence of Plaintiffs, Mark and Mary Biroshak, on May 17, 1999.  The raid and search were the result of a drug activity investigation by various law enforcement agencies.  The Plaintiffs were not the targets of the investigation, but rather suspected contraband in the residence was sought by the authorities.  A federal search warrant was sought by DEA Defendant, Stiegelmeyer, and authorized by Magistrate Judge Sherman.

The raid consisted of two components.  The first, entry and securing the premises. The second, search of the premises.  Each component was executed by a separate law

enforcement agency. The Hamilton SWAT team (Hamilton Defendants) entered and secured the premises. The search was performed by the DEA.

None of the occupants was arrested and in fact were permitted to leave the premises at a point during the search.

## II.   STATEMENT OF THE CASE.

A multi-jurisdictional drug investigation was underway in May, 1999, which involved the Butler County, Ohio area. (P. 4, K. Etchison Depo.; P. 11, C. Stiegelmeyer Depo.) The investigation was initiated by Defendant, Charles Stiegelmeyer ("Stiegelmeyer") and Defendant Peace. (P. 5, K. Etchison Depo.) The DEA task force worked in conjunction with the City of Hamilton Police Department and the Butler County Sheriff's Department. (P. 5, K. Etchison Depo.) The DEA was in charge of the search and investigative functions of the operation. (P. 42, C. Stiegelmeyer Depo.)

At a point during the investigation it was determined sufficient evidence had been gathered to secure a search warrant for the Biroshak residence. (Pp. 7, 8, 9, K. Etchison Depo.)

One of the targets of the investigation was Joe Blankenship. (P. 24, C. Stiegelmeyer Depo.) Blankenship is the son of Plaintiff, Mary Biroshak, and sometimes stayed at the 922 Vine Street address. (Pp. 24, 25, C. Stiegelmeyer Depo.; Pp. 15, 16, Mary Biroshak Depo.)

The application for the search warrant was reviewed by the U.S. Attorney's Office prior to presenting it to Magistrate Judge Sherman. (P. 29, C. Stiegelmeyer Depo.)

Magistrate Judge Sherman was presented with the application and affidavit to secure the search warrant.  The search warrant was authorized by Magistrate Sherman.  (P. 46, C. Stiegelmeyer Depo.; Exhibit A, Application, Exhibit B, Affidavit, and Exhibit C, Search Warrant)

The operation consisted of two components.  The first was the securing of the premises by the SWAT team and the second was the search of the premises by the DEA. (P. 40, C. Stiegelmeyer Depo.)  The search team was looking for drugs and weapons at the Biroshak residence.  (P. 8, M. Mann Depo.)

The team leader, M. Mann, estimates the Hamilton SWAT team secured the premises within approximately ten minutes or less of entering.  Once secured, the SWAT team left the premises and the DEA searched the residence for approximately two hours. (Pp. 5, 14, 20, 21, M. Mann Depo.)  Mann completed the inventory receipt.  (P. 10, M. Mann Depo.; Exhibit D)

Mary and Mark Biroshak were the residents of 922 Vine Street on the date of the raid.  (P. 7, Mark Biroshak Depo.)  Joe Blankenship is the son of Mary Biroshak who occasionally stayed at the 922 Vine Street residence.  (Pp. 14-16, Mary Biroshak Depo.) On the date of the raid, Blankenship was in jail for a probation violation.  (P. 14, Mary Biroshak Depo.)

Two of the Biroshaks' grandchildren, Paige Evans and Acacia Lipps, were in the home at the time of the raid.  (P. 17, Mary Biroshak Depo.)

The raid began around 5:30 a.m. or just at daylight.  (P. 18, Mary Biroshak Depo.; P. 19, Mark Biroshak Depo.)  Mary and Mark Biroshak were awakened by the sound of breaking glass and gunshots.  (P. 18, Mary Biroshak Depo.; P. 20, Mark Biroshak Depo.)

The Biroshaks did not hear the knock and announce by the officers, though the participating officers and a DEA agent specifically recall the knock and announce. (P. 14, M. Mann Depo.; P. 4, G. Dininger Depo.; P. 19, Mary Biroshak Depo.; P. 22, Mark Biroshak Depo.)

The SWAT team encountered the Biroshaks and one granddaughter in a downstairs bedroom. The Biroshaks were told to get on the floor. (P. 20, Mary Biroshak Depo.) One granddaughter remained on the bed while the other was a couch in another downstairs room. (P. 20, Mary Biroshak Depo.) A pat down search of Mark Biroshak was performed, though not of Mary Biroshak. (P. 26, Mark Biroshak Depo.; P. 24, Mary Biroshak Depo.)

The occupants were permitted to go to the porch at which time the warrant was presented. (P. 27, Mary Biroshak Depo.) Aside from the pat down search of Mark Biroshak, no one else was touched, threatened, handcuffed nor arrested. The Biroshaks were permitted to leave by Mary Biroshak's estimate 1 to 1½ hours later. (Pp. 30, 31, Mary Biroshak Depo.; P. 40, Mark Biroshak Depo.)

During the entry a dog leaped from a second floor window and landed in close proximity to SWAT team member, L. Buchanan. (P. 6, L. Buchanan Depo.) Buchanan was outside of the residence and felt a thud when the dog landed. Buchanan perceived the dog as a threat and shot the dog. Two other officers also shot the dog. (Pp. 6-10, L. Buchanan Depo.)

Each of the Hamilton officers was duly certified by the State of Ohio and had received training in special weapons, tactics, etc. Each SWAT team member receives continuing SWAT training. (Affidavit of N. Ferdelman)

## III. ARGUMENT OF LAW.

Plaintiffs have asserted claims against three groups of Defendants. The first includes the City of Hamilton, Ohio, Hamilton Chief of Police Neil Ferdelman, and the individual Hamilton police officers (Hamilton Defendants). The second is the Butler County Sheriff, Don Gabbard. The final group is the DEA Defendants.

This Motion addresses only those claims against the Hamilton Defendants, *e.g.*, the City of Hamilton, Chief of Police, Neil Ferdelman, and the Hamilton police officers.[1]

### A. Plaintiffs' Fourth Amendment Claims Against the Hamilton Officers.

#### 1. **Plaintiffs' Fourth Amendment Rights were not violated.**

Paragraph 21(a) of Plaintiffs' First Amended Complaint alleges these Defendants violated their Fourth Amendment Rights by using a degree of force which was unreasonable under the circumstances. This allegation is prefaced by general claims of intentional, negligent and deliberate indifferent conduct on the part of these Defendants.

The Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), held all claims of excessive force must be analyzed under the Fourth Amendment and its reasonableness standard. The Court explained the reasonableness standard:

> With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. ...

\* \* \*

---

[1] Defendant, Wendell S. Sorrell, was not a member of the Hamilton Police Department at the time of the raid nor did he participate in the raid at 922 Vine Street. (Affidavit of N. Ferdelman) Further, Defendant Shawn Pater was not a member of the Hamilton SWAT team but rather a paramedic who took no role in the raid. Efforts are currently underway to have Plaintiffs' counsel voluntarily dismiss Defendants Sorrell and Pater.

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him, without regard to their underlying intent or motivation. *Id.* at 396, 397.

The Sixth Circuit has recognized the fact-specific nature of the inquiry determining the reasonableness of the force applied. Factors deemed relevant include the severity of the crime, whether the suspect poses a threat to anyone and whether the suspect is attempting to escape or is resisting arrest. *Patrick v. City of Detroit*, 906 F.2d 1108, 1115 (6th Cir. 1990); *see also, Adams v. City of Auburn Hills*, 336 F.3d 515 (6th Cir. 2003).

However, in this case, other than weapons pointed at Plaintiffs for a relatively short duration and the shooting of the dog which posed an imminent threat to officers, there was no force used by any of the officers. Plaintiffs concede they were not touched, threatened or handcuffed by the officers. The only physical contact was a brief pat down search of Mark Biroshak. (P. 26, Mark Biroshak Depo.)

The shooting of the dog must be viewed as objectively reasonable under the circumstances. Officer Buchanan's account of what transpired can lead to no other conclusion. A large dog leaped from a second floor window while Officer Buchanan was standing guard outside. The officer heard a thud, turned and saw the dog ready to lunge towards him. In response, he shot the dog.

The actions of these officers do not rise to the level of excessive force and are certainly not actionable under §1983 since no Constitutional violation occurred.

### 2. **The officers are entitled to qualified immunity.**

Plaintiffs do not allege any particular act(s) of the officers as a basis for their claim of excessive force. Judging the actions of the officers, it certainly cannot be claimed any

of their actions were unlawful. There is nothing to suggest the officers did not have a legitimate justification for their conduct. Accordingly, they are entitled to qualified immunity. In. *Saucier v. Katz*, 533 U.S. 194 (2001), the Court recognized the existence of qualified immunity in the context of a claim of excessive force.

The officers are entitled to summary judgment as to Plaintiffs' Fourth Amendment claims.

### B. Plaintiffs' Fifth Amendment Claims Against the Hamilton Officers.

Plaintiffs allege in Paragraph 21(b) of their First Amended Complaint a violation of their Fifth Amendment Rights due to unwarranted and unreasonable restraints. However, the acts of these Defendants when viewed in the context of the applicable law demonstrate no Constitutional violation occurred.

The Supreme Court has recognized a search warrant, based on probable cause to search for contraband, carries with it the right to detain the occupants while the search is conducted. *Michigan v. Summers*, 452 U.S. 692, 704 (1981). The right to detain was extended to occupants who are non-residents who are present when the police arrive. *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002).

The Hamilton officers entered, secured and left the premises in a span of no more than ten minutes. (Pp. 5, 14, 20, 21, M. Mann Depo.) The entrance was pursuant to a federal warrant authorized by Magistrate Judge Sherman. The search warrant was validated based upon the affidavit of C. Stiegelmeyer, establishing probable cause. The warrant is valid if there is probable cause or a "fair probability" that contraband or other evidence of a crime will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *U.S. v. Barry*, 90 F.3d 148 (6th Cir. 1996). The Sixth Circuit in *Mays v.*

*City of Dayton*, 134 F.3d 809 (6th Cir. 1998), commented upon the specificity requirement in the Fourth Amendment related to search warrants. The *Mays* Court recognized the specificity requirement relates to the place to be searched and of things to be seized as opposed to a person against whom the evidence may be used. *Id.* at 814. In *Mays*, the Court emphasized the reliance it places on a Magistrate's determination as to probable cause. Specifically:

> In determining whether a warrant is supported by probable cause, this Court pays "great deference" to the issuing magistrate's determination as to probable cause and recognizes that such a finding should not be set aside unless arbitrarily exercised. *Id.* at 814.

The acts of the officers in conjunction with a valid search warrant, demonstrate there is no basis for Plaintiffs' Fifth Amendment claims against them. Accordingly, these claims must, too, be dismissed.

In the alternative, the Hamilton officers are entitled to qualified immunity with regard to Plaintiffs' Fifth Amendment claims. Utilizing the three tiered analysis in *Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003), in determining entitlement to qualified immunity, the officers' actions were not objectively unreasonable and accordingly are entitled to qualified immunity.

### C. Plaintiffs' Fourteenth Amendment Claims.

The entering Hamilton SWAT officers did not participate in the search of the premises and Plaintiffs' claims against them in that regard must be dismissed.

One Hamilton officer, Greg Dininger, did participate in the search. However, in light of the fact the search was conducted pursuant to a valid warrant and Dininger's description of what he did demonstrate there was no Constitutional violation.

Dininger had responsibility for searching a downstairs bedroom. (Pp. 9, 10, G. Dininger Depo.) Dininger described his search as looking through everything in the room. He did find a small quantity of marijuana. (Pp. 13, 14, G. Dininger Depo.) Dininger, simply, did not violate Plaintiffs' Constitutional rights.

In the alternative, Dininger is entitled to qualified immunity. His actions were not objectively unreasonable. *See Feathers, supra.*

### D. Claims Against the City of Hamilton and Chief Ferdelman.

It is not clear the nature of Plaintiffs' claims against the City of Hamilton and Ferdelman in Paragraph 21 of Plaintiffs' First Amended Complaint. In the first instance, Ferdelman was not present and did not participate in the raid. (P. 17, N. Ferdelman Depo.)

Claims of negligence against the City of Hamilton and Ferdelman and the officers, for that matter, are barred under R.C. §2744.02(A)(1); §2744.03(A)(6).

Claims against the City of Hamilton under a theory of *respondeat superior* are also barred by the doctrine in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1977).

Ferdelman is sued only in his official capacity and to the extent Plaintiffs seek to hold him liable for the actions of the officers, those claims too are barred. This is so since a claim against the officer in his official capacity is a claim against the municipality. *Kentucky v. Graham*, 473 U.S. 159 (1985).

### E. Failure to Train and Municipal Liability.

Plaintiffs have asserted claims against Chief Ferdelman in Paragraph 22 of their First Amended Complaint for alleged failure to properly supervise the training, conduct of the various Hamilton officers, etc. In Paragraph 24, Plaintiffs allege the City of Hamilton

was deliberately indifferent to Plaintiffs' rights by permitting and tolerating a custom or practice of unconstitutional and excessive use of force and unconstitutional searches.

Given the fact Chief Ferdelman is sued in his official capacity, the claims set forth in Paragraphs 22 and 24 are essentially claims against the municipality and will be addressed as such. The claims set forth in Paragraph 22 are for an alleged failure to train while the claims in Paragraph 24 are predicated upon an unconstitutional custom or policy.

### 1. The Hamilton Officers were properly trained and a claim for inadequate training cannot be sustained.

The affidavit of the Chief of Police, Neil R. Ferdelman, sets forth facts establishing the training levels of the officers involved in the raid. Each officer was a duly certified police officer by the State of Ohio and all were members of the SWAT team with the exception of Lt. Dininger. Each member of the SWAT team received training in the use of weapons, tactics and all aspects of conducting searches, securing premises, etc. Further, each SWAT team member receives additional ongoing training and the team meets at least once a month for additional training, etc.

These facts do not lend themselves to any criticism as to the training level of the Hamilton police officers.

The issue of when inadequate training may be a basis for municipal liability was discussed and resolved by the Court in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). The *Canton* Court ultimately established a standard under which claims of inadequate training are to be judged. Specifically:

> . . . Alleging that the city's failure to provide training to municipal employees resulted in the constitutional deprivation she suffered are cognizable under §1983, they can only yield liability against a municipality where the city's failure to train

> reflects deliberate indifference to the constitutional right of its inhabitants. *Id.* at 392.

The *Canton* Court also made clear the claimed deficiency in the city's training program was also closely related to the ultimate injury.

In the absence of evidence the officers were inadequately trained rising to the level of "deliberate indifference" the claims of inadequate training must fail. *Matthews v. Jones*, 35 F.3d 1046 (6th Cir. 1994).

There is nothing to suggest the alleged inadequate training rises to the level of "deliberate indifference". Accordingly, Plaintiffs' claims against Ferdelman in Paragraph 23(a - c) of Plaintiffs' First Amended Complaint must be dismissed.

### 2.    There is no basis for municipal liability.

Plaintiffs allege in Paragraph 24 of their First Amended Complaint the municipality was deliberately indifferent with regard to Plaintiffs' rights for authorizing, permitting and tolerating custom and practice of unconstitutional and excessive use of force and unconstitutional search.

For the reasons set forth earlier, Plaintiffs' claim against the municipality must fail, if for no other reason, there is no basis for a claim of an unconstitutional search or use of unconstitutional force. Notwithstanding this infirmity, there is no basis for Plaintiffs' claims against the City of Hamilton.

In order to establish municipal liability, Plaintiffs must establish with particularity the municipality was aware of prior unconstitutional actions of its employees and failed to respond. *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997). In this case, there is nothing before the Court indicative of any alleged prior unconstitutional search or unconstitutional use of force by officers employed by the City of Hamilton. There is nothing

to suggest the acts of the officers in effectuating this raid were the result of any type of unconstitutional custom or policy of the City of Hamilton, Ohio.

These claims against the City must be dismissed.

## IV. CONCLUSION.

Based on the foregoing, it is respectfully requested Plaintiffs' First Amended Complaint be dismissed as to these Defendants in that there is no genuine issue as to any material fact and these Defendants are entitled to summary judgment as a matter of law.

/s/    Wilson G. Weisenfelder, Jr.
Wilson G. Weisenfelder, Jr. (#0030179)
RENDIGS, FRY, KIELY & DENNIS, LLP
One West Fourth Street, Suite 900
Cincinnati, OH 45202
(513) 381-9292
(513) 381-9206 - Facsimile

Trial Attorney for Hamilton Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2003, I electronically filed the foregoing Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott T. Greenwood, Esq.
1 Liberty House
P. O. Box 54400
Cincinnati, OH 45254-0400
**Attorney for Plaintiffs**

Jack McGowan, Esq.
MCGOWAN & ASSOCIATES
246 High Street
Hamilton, OH 45011
**Attorney for Defendant, Harold Gabbard**

Gerald Kaminski, Esq.
Assistant U.S. Attorney
221 East 4th Street, Suite 400
Cincinnati, OH 45202
**Attorney for DEA Defendants**


        /s/      Wilson G. Weisenfelder, Jr.
        Wilson G. Weisenfelder, Jr.

360768.1